

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | Case No. 3:13-MJ-503-BH |
| SANDY JENKINS | § § | |

### GOVERNMENT'S MOTION FOR DETENTION AND MOTION FOR CONTINUANCE OF DETENTION AND PROBABLE CAUSE HEARINGS

Pursuant to 18 U.S.C. § 3142, the government respectfully moves for pretrial detention of defendant Sandy Jenkins ("Jenkins") and for a two-day continuance of the detention and probable cause hearings in this case. In support thereof, the government shows the Court as follows.

### I. BACKGROUND

Over the course of approximately eight years, Sandy Jenkins engaged in an extensive and egregious embezzlement scheme from his former employer, the Collin Street Bakery, resulting in losses to the Bakery that exceed $16 million. The fraud was simple and the evidence overwhelming: Jenkins, in his position as corporate controller, caused Bakery checks to be written to Jenkins's personal creditors; those checks were then "voided" in the Bakery's accounting system, and a second check was written to one of the Bakery's legitimate creditors, which was never sent anywhere.[1] Jenkins, however,

---

[1] The government's investigation shows that between 2005 and 2008, Jenkins caused 888 fraudulent checks to be sent to his personal creditors, resulting in $16,649,786.91 in losses to the Bakery. Preliminary analysis of the checks shows over $11 million went to pay Jenkins's personal American Express card.

Government's Motion for Detention – Page 1 of 9

mailed the checks to his personal creditors in order to bankroll a lavish lifestyle that included houses in Corsicana, Texas, and Santa Fe, New Mexico; approximately 43 luxury automobile purchases for himself, his wife, and his daughter; frequent travel on private planes around the United States and abroad;[2] and a watch/jewelry collection that, based on preliminary estimates, has approximately $3 million in value.

Jenkins was terminated by the Bakery on June 21, 2013, once the fraud was discovered. That day, Jenkins and his wife gathered up $62,500 in cash and two bags of valuables—primarily watches and jewelry—and fled to Austin, Texas, where Jenkins dumped the items in a safe controlled by his daughter. Jenkins and his wife then left the state, retreating to their second home in Santa Fe, New Mexico (which was paid for with embezzled funds), where they stayed for at least a few weeks.

Jenkins and his wife returned to Austin, Texas, late in the evening on July 23 or early in the morning on July 24. That day—July 24—the FBI executed search warrants at Jenkins's personal residence and secluded storage unit in Corsicana. Upon hearing that the FBI was executing the warrants, Jenkins retrieved the cash and jewelry and watches from his daughter's safe. The cash was provided to his wife and daughter, and later used to retain counsel. The jewelry and watches and other valuables were placed in a blue, insulated Whole Foods grocery bag and Jenkins instructed his daughter to get the items out of the house because it was his "retirement" that he "needed to protect" and "could

---

[2] In particular, records from North Dallas Aviation show that Jenkins purchase 232 private charter flights between 2005 and 2013, spending approximately $3.2 million. During that time, he made frequent trips to his Santa Fe residence, as well as trips to Martha's Vineyard, Aspen, Turks and Caicos, and Napa, California, among other places.

not lose."

Jenkins's daughter sought the advice of a lawyer that afternoon, who advised her to return the items to Jenkins, which she did that evening. The next day, while the wife and daughter went to meet with an attorney, Jenkins left the daughter's residence with the blue, insulated Whole Foods bag. No one has seen the bag since.

Later that day (July 25), sixteen watches (valued over a quarter million dollars), one gold bar, and two gold coins were discovered in and around Lady Bird Lake (formerly known as Town Lake), a popular hike and bike trail in Austin, Texas. Although the government's investigation is ongoing, several of the watches have been confirmed as registered to Kay Jenkins, the defendant's wife, or purchased at vendors known to have been frequented by Jenkins. In addition, one of the watches matched the description of a receipt found in Jenkins's office at the Bakery for a Rolex watch purchased in Antigua.

On Monday, August 12, 2013, the FBI executed a second search warrant at Jenkins's personal residence in Corsicana. While the FBI was at Jenkins's house, Jenkins's daughter independently contacted Jenkins via text message asking the location of the blue, insulated Whole Foods bag. Jenkins refused to answer.

Although the government has not sought an indictment against Jenkins, each of the 888 mailings potentially constitutes a separate mail fraud charge, not to mention whether the government may seek money laundering, tax, or obstruction counts against him. In short, Jenkins faces a significant term of imprisonment if convicted in this case.

II.     **ARGUMENT AND AUTHORITIES**

This Court should detain Jenkins because his efforts to obstruct justice by disposing of evidence of his criminal activity shows that he is both a flight risk and a danger to the community and himself and that no conditions or combinations of conditions can reasonably assure his presence for trial. *See* 18 U.S.C. § 3142; *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) ("[O]bstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984.").

Under 18 U.S.C. § 3142, there are two sufficient and independent grounds for pretrial detention under the Bail Reform Acct: to assure the appearance of the defendant, or to insure the safety of the community or another person. *See* 18 U.S.C. § 3142(b). If there are no conditions of release that can assure either the appearance of the defendant or the community's safety, then pretrial detention is mandated. *See* 18 U.S.C. § 3142(e).

Inherent in the concept of "flight risk" or "danger to the community" is that the defendant will somehow thwart the judicial process if released pending trial. *United States v. Ploof*, 851 F.2d 7, 12 (1st Cir. 1988) ("[W]here there is a serious risk that a defendant, if released, would obstruct justice or intimidate witnesses, it could, in ordinary speech, reasonably be said that that person was a danger to the community.") As a result, efforts to obstruct justice—here, by disposing of evidence of the crime—is sufficient to establish both flight and danger under § 3142. This Court cannot be reasonably assured that a defendant will attend court proceedings as required if that same defendant is taking steps—with full knowledge of the ongoing federal criminal investigation—to dispose of

valuable assets that are evidence of the crime. *See LaFontaine*, 210 F.3d at 134; *United States v. Payden*, 768 F.2d 487, 490 (2d Cir. 1985) (holding that the court had the power to detain the defendant "if it found that his release posed a serious threat to the court's processes").

> A. **Jenkins's Obstructive Conduct—Disposing of Property—Establishes that he is a Flight Risk**

Jenkins's actions in the immediate aftermath of his termination from the Bakery show that he is a flight risk. Upon termination, Jenkins returned home and gathered a collection of valuables—a heavy bag of watches, jewelry, diamonds, and other valuable items—and fled to Austin, Texas, where he stashed the items in a safe controlled by his daughter. It is plain from those actions that Jenkins knew that law enforcement would be at his house soon enough to seize property improperly obtained through fraud and that whatever Jenkins wanted to keep, he had to get out of the house immediately.

After securing his valuables in a safe controlled by his daughter, Jenkins and his wife left the state, heading to their second home (purchased with embezzled funds) in Santa Fe, New Mexico. Then, Jenkins—with full knowledge of the ongoing federal criminal investigation—took steps to dispose of the valuable assets that were purchased with embezzled funds and thus were evidence of his criminal activity. Jenkins retrieved the items from his daughter's safe upon learning that the FBI was searching his Corsicana home. Jenkins transferred the items into a blue, insulated Whole Foods grocery bag, which his daughter described as weighing between 40 and 60 pounds. On Thursday, July 25, Jenkins left his daughter's Austin apartment with the bag in the morning.

A few hours later, around 11:00 AM, an off-duty police officer from The University of Texas discovered sixteen watches (valued at over $250,000), one gold bar (valued at $13,000), and two gold coins in and around Lady Bird Lake in Austin. The government's ongoing investigation has confirmed several of the watches have been tied to Sandy Jenkins or his wife. No one has seen the blue, insulated Whole Foods bag since, and when asked about it recently by his daughter, Jenkins refused to answer.

It is plain that Jenkins has taken steps to dispose of or destroy fruits of the crime—evidence of his criminal activities—in an effort to obstruct justice in this case. That alone shows that this Court cannot set conditions of release—and thus trust Jenkins—to guarantee he will not take other steps to circumvent the criminal justice process.

### B. Jenkins's Obstructive Conduct—Disposing of Property—Establishes that he is a Danger to the Community

Just as Jenkins's obstructive conduct shows that he is a flight risk, Jenkins's destruction of evidence establishes that he is a danger to the community. Courts have routinely recognized that "economic harm" can be considered under the Bail Reform Act when evaluating danger to the community under 18 U.S.C. § 3142. *See United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."). The government was able to recover 16 watches, one gold bar, and two gold coins, but that is unlikely the full extent of the valuables in the blue, insulated Whole Foods bag. No one has seen that bag since approximately July 25, the day after the FBI executed the search warrant. And when his daughter independently and without prompting by law enforcement asked about its

whereabouts on Monday, August 12, the day he was arrested, Jenkins refused to answer.

Moreover, the economic harm of Jenkins's disposal of evidence not only hinders the prosecution of him for his criminal acts, but also further harms the victim, by preventing the victim from recovering all of the items purchased with proceeds of the fraud. Losses in this case—at this time—exceed $16 million. The government is in the process of identifying and seizing all of Jenkins's assets purchased with proceeds of the fraud. While the government has seized numerous assets that will ultimately be used to satisfy a restitution/forfeiture order, Jenkins's effort to ditch assets reduces the potential recovery for the victim under 18 U.S.C. § 3663A.

### C. Jenkins's Destruction of Property Occurred at Around the Same Time he Agreed to an Wide-Ranging Asset Freeze in the Bakery's Civil Case

Finally, Jenkins took all of these steps at the same time the Bakery was obtaining a Temporary Injunction that froze his assets and prevented him from disposing of assets. The Bakery filed a civil case in Navarro County against Jenkins on July 3, 2013. The Bakery took steps to serve Jenkins after filing its civil case starting July 3, but was unable to locate him. The Bakery obtained an order that permitted service through counsel, who accepted service on Jenkins's behalf on July 15, 2013.[3]

Through counsel, Jenkins and the Bakery then submitted an Agreed Order Granting Temporary Injunction ("Agreed Order"), which was executed by the Court on Friday, July 26, just two days after the FBI executed the search warrant and Jenkins

---

[3] It appears that Jenkins retained Brett Stalcup on or about June 26, 2013, five days after he was terminated from the Bakery.

**Government's Motion for Detention – Page 7 of 9**

retrieved his sack of valuables from his daughter's safe.[4] In the Agreed Order, which was signed by Jenkins's counsel on Jenkins's behalf, Jenkins admits that he "utilized his role" as the former corporate controller of the Bakery "to engage in a fraudulent check scheme writing unauthorized [Bakery] checks to payees that were not true [Bakery] vendors." (Exh. A at 1.) As a result of the criminal activity, Jenkins agreed in the Order that he was "immediately restrained" from disposing of any of his assets, including money in bank accounts and jewelry and watches. (Exh. A at 3-4.)

At the same time that Jenkins's attorney agreed to the asset freeze on Jenkins's behalf, Jenkins was in the process of ditching at least some of the significantly valuable assets in his possession—sixteen watches, one gold bar, and two gold coins—in and around Lady Bird Lake in Austin. Jenkins's failure to comply with the asset freeze in the civil case only further supports the conclusion that he is both a flight risk and a danger to the community and thus should be detained pending resolution of the criminal case.

----- **NOTHING FURTHER ON THIS PAGE** -----

---

[4]  A copy of the Agreed Order Granting Temporary Injunction is attached hereto as Exhibit A.

## III. CONCLUSION

The government respectfully asks this Court to detain Jenkins pending trial.

Respectfully submitted,

Dated: August 13, 2013

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

/s/ J. Nicholas Bunch
J. NICHOLAS BUNCH
Assistant United States Attorney
Texas Bar No. 24050352
1100 Commerce, Suite 300
Dallas, Texas 75242
Telephone: 214.659.8836
Facsimile: 214.767.4104
nick.bunch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2013, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the electronic filing system of the Court. The electronic case filing system will send a notice of filing to all the attorneys of record who have consented to such service. I also electronically mailed a copy to Brett Stalcup, who I believe to be counsel for Sandy Jenkins in this criminal matter. A copy will be provided to him at the initial appearance before Magistrate Judge Ramirez on August 13, 2013.

/s/ J. Nicholas Bunch
J. NICHOLAS BUNCH
Assistant United States Attorney

# EXHIBIT A

CAUSE NO. D13-22393-CV

| | | |
|---|---|---|
| COLLIN STREET BAKERY, INC.<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | OF NAVARRO COUNTY, TEXAS |
| SANDY JENKINS<br>Defendant. | §<br>§ | 13th JUDICIAL DISTRICT |

FILED 2013 JUL 26 AM 11:19 JOSHUA B. TACKETT DISTRICT CLERK NAVARRO COUNTY, TX DEPUTY

## AGREED ORDER GRANTING TEMPORARY INJUNCTION

Came on today for consideration the Application for Temporary Injunction of Plaintiff Collin Street Bakery, Inc. ("CSB"). The parties have agreed and the Court finds from the facts set forth below and in Plaintiff's verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction and the other relevant pleadings filed herein, and the testimony and evidence offered by the parties at the hearing on this matter, that unless Defendant Sandy Jenkins ("Jenkins") is immediately restrained, in the manner set forth in this Order, Jenkins will commit acts that will cause immediate, irreparable harm to CSB before final trial on the merits of this case may be had; and that if the commission of these acts is not restrained immediately, CSB is in imminent danger of suffering irreparable harm, injury, loss and damage as a direct result.

The parties agree and the Court finds that Jenkins is the former Corporate Controller of CSB who utilized his role of being responsible for writing all of CSB's accounts payable checks, overseeing reconciliation of CSB's bank statements and overseeing CSB's petty cash to engage in a fraudulent check scheme writing unauthorized CSB checks to payees that were not true CSB vendors. Jenkins' fraudulent check scheme involved Jenkins cutting CSB checks to his personal creditors, then entering into CSB's computerized accounting system an indicator that those checks had been voided to take the check information out of the general check register and deposit the information into the voided checks register. The checks paying Jenkins' personal

creditors were not actually voided. Rather, they were mailed to the designated payees and cashed for Jenkins' sole benefit. In order to keep CSB's accounting records in balance, Jenkins would at the same time prepare a check on CSB's computerized accounting system to an approved CSB vendor for the same amount as his fraudulent check, typically a check to the company's Postal Service account or one of CSB's food supply vendor accounts, such as Sysco. Jenkins would never mail the checks he wrote to the real CSB vendor as a cover.

At this time, it appears that Jenkins stole at least $16,330,049.98 from CSB by way of his fraudulent check scheme through unauthorized checks Jenkins used to pay his personal accounts and creditors and unauthorized withdrawals from CSB's Petty Cash. Jenkins wrote fraudulent checks to at least the following payees: Bank of America, Bank of America, N.A., American Express, Citi Cards, U.S. Bank, Lex Fin Svcs, Cardmember Service, Sewell, Inc., Financial Services, Chase, MBNA America, Lexus Fin Svcs, Neinman, Inc., Neiman, Inc., Lexux Fin Svcs, DeBoulle, Inc., GE Money LOC, HSBC Card Services, Washington Mutual Card, Capital One, Capital One Bank, Citii Cards, Pineda's Nursery, Golden Circle Tree Trimming, Citi-Cards, GEM LOC, Pineda's, Pineda Nursery, GE Money LOG, NM, Inc., CITC Cards, BAC Home Loans Servicing, LP, BAC H/L Servicing, LP, Corsicana Preservation, BAC HL Serv. LP, BAC Loans Serv, LP, BAC Home LS, LP, BAC HO LO Serv, LP, BAC H/L Serve, LP, Bank of America, N.A., Bank of America and Petty Cash (hereinafter the "Unauthorized Payees"). Jenkins also mailed cash via Federal Express to Santa Fe, New Mexico, as well as potentially other locations.

Jenkins has access to numerous financial accounts and credit cards, spends incredible sums of money and has acquired significant assets using money he stole from CSB. These accounts, credit cards, real property, motor vehicles and other assets include, but are not limited to: CitiBank Visa credit card ending in 7392; Bank of America credit card ending in 1157; two

American Express Centurion "Black" credit cards ending in account numbers 1001 and 3007; Capital One credit card account number ending in 4886; Bank of America account numbers ending in 6644, 1127 and 3900; Century Bank account numbers ending in 1677 and 5116; Chase account ending in 1043; Heritage Cash Trust Money Market Account numbers ending in 2052, 5105 and 5116; National Financial Services account ending in 4154; Computershare Trust Company, N.A. account numbers ending in 6856 and 4561; TXU Retirement Plan c/o Melon Bank ending in JENK; real property located at 1235 W. 3rd Street, Corsicana, Texas 75110 and 35 Cibola Circle, Santa Fe, New Mexico 87508; Yukon Denali XL VIN 1GKS2MEF4DR228922; 2012 Mercedes B VIN WDDEJ8GB9AA024372; 2011 Lexus LS460 VIN JTHGL5EF1B5043654; Mercedes GL450 VIN 4JGDF7CE4DA114207; Lexus LX570 VIN JTJHY7AX804092874; three gold Rolex watches; platinum President Rolex; two additional Rolex watches; GBW SS/YG gentlemen's watch in stainless steel and yellow gold; GBW Date Just Silver 10 BRI watch in stainless steel and 18k gold; Prada watch; three Wellendorff rings; two Mac Book Air computers Nos. C02JL1DHDRV9 and C02HV2GCF2GC; Ipad No. DMPJN2W3F18G; and incredible amounts of other jewelry and art (hereinafter "Jenkins' Identified Accounts and Assets").

Jenkins' accounts and assets must be frozen during the pendency of these legal proceedings to preserve the status quo by preserving evidence and ensuring the immediate cessation of any continuing disbursement, dissipation and expenditure of monies and other assets by Jenkins which are the subject matter of this lawsuit, as they were illegally obtained.

**IT IS, THERFORE, ORDERED, ADJUDGED AND DECREED** that, from the date of this Order until the time of trial or until further order of this Court, Defendant Jenkins is immediately restrained from transferring, spending, concealing, encumbering, liquidating, withdrawing, disbursing, removing, selling or allowing the same, from any financial institution

or from the jurisdiction of this Court, any bank accounts, credit cards, money, stocks, bonds, mutual funds, jewelry, art, vehicles, brokerage accounts, other monetary accounts of any kind, notes, equipment, funds, accounts receivable, policies of insurance, trust agreements, safe deposit boxes or other assets and property, real, personal or mixed, wherever situated, belonging to or owned by, in the possession or custody of, standing in the name of, or claimed by Jenkins, whether individually or jointly with his wife Kay Jenkins, or any other individual, including, but not limited to, Jenkins' Identified Accounts and Assets set forth above and the Unauthorized Payees. Further, Jenkins is hereby restrained from utilizing or incurring any additional debt on or making any additional payments towards debt already incurred on any credit card to which Jenkins has access, individually or jointly with his wife, Kay Jenkins, specifically including, but not limited to, Jenkins' Identified Accounts and Assets and the Unauthorized Payees.

The Unauthorized Payees include: Bank of America, Bank of America, N.A., American Express, Citi Cards, U.S. Bank, Lex Fin Svcs, Cardmember Service, Sewell, Inc., Financial Services, Chase, MBNA America, Lexus Fin Svcs, Neinman, Inc., Neiman, Inc., Lexux Fin Svcs, DeBoulle, Inc., GE Money LOC, HSBC Card Services, Washington Mutual Card, Capital One, Capital One Bank, Citii Cards, Pineda's Nursery, Golden Circle Tree Trimming, Citi-Cards, GEM LOC, Pineda's, Pineda Nursery, GE Money LOG, NM, Inc., CITC Cards, BAC Home Loans Servicing, LP, BAC H/L Servicing, LP, Corsicana Preservation, BAC HL Serv, LP, BAC Loans Serv, LP, BAC Home LS, LP, BAC HO LO Serv, LP, BAC H/L Serve, LP, Bank of America, N.A., Bank of America and Petty Cash.

Jenkins' Identified Accounts and Assets include: CitiBank Visa credit card ending in 7392; Bank of America credit card ending in 1157; two American Express Centurion "Black" credit cards ending in account numbers 1001 and 3007; Capital One credit card account number ending in 4886; Bank of America account numbers ending in 6644, 1127 and 3900; Century

Bank account numbers ending in 1677 and 5116; Chase account ending in 1043, Heritage Cash Trust Money Market Account numbers ending in 2052, 5105 and 5116; National Financial Services account ending in 4154; Computershare Trust Company, N.A. account numbers ending in 6856 and 4561; TXU Retirement Plan c/o Melon Bank ending in JENK; real property located at 1235 W. 3rd Street, Corsicana, Texas 75110 and 35 Cibola Circle, Santa Fe, New Mexico 87508; Yukon Denali XL VIN 1GKS2MEF4DR228922; 2012 Mercedes B VIN WDDEJ8GB9AA024372; 2011 Lexus LS460 VIN JTHGL5EF1B5043654; Mercedes GL450 VIN 4JGDF7CE4DA114207; Lexus LX570 VIN JTJHY7AX804092874; three gold Rolex watches; platinum President Rolex; two additional Rolex watches; GBW SS/YG gentlemen's watch in stainless steel and yellow gold; GBW Date Just Silver 10 BRI watch in stainless steel and 18k gold; Prada watch; three Wellendorff rings; two Mac Book Air computers Nos. C02JL1DHDRV9 and C02HV2GCF2GC; Ipad No. DMPJN2W3F18G; and incredible amounts of other jewelry and art.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that final trial on the merits of this case shall be heard before this Court at 9:00 a.m. on _October 20_, 2014.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the District Clerk shall forthwith issue a Temporary Injunction in conformity with the law and the terms of this Order, on the filing by CSB of the bond hereinafter required, and on approving the same according to the law.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Order shall not be effective unless and until CSB executes and files with the District Clerk a bond, in conformity with the law in the amount of $ _500_.

_It is Further ORDERED, ADJUDGED, AND DECREED that $500.00 previously deposited shall serve as the bond for the injunction._

ORDER GRANTING TEMPORARY INJUNCTION                                    Page 5 of 7

SIGNED this the 26th day of July, 2013.

_____
JUDGE PRESIDING

AGREED TO AS TO FORM AND SUBSTANCE:

**THE LAW OFFICES OF BRETT STALCUP**
3615 N. Hall Street
Dallas, Texas 75219
(214) 219-1000

By: _____
Brett Stalcup
Texas Bar No. 1901800

ATTORNEYS FOR DEFENDANT SANDY JENKINS

**HIERSCHE, HAYWARD, DRAKELEY & URBACH, P.C.**

By: _____
Craig A. Haris
State Bar No. 09036750
Laurie N. Arnoldy
State Bar No. 24078158

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
(972) 701-7000 – Telephone
(972) 701-8765 – Facsimile

And



**DIAMOND MCCARTHY, LLP**

Andrea Levin Kim
State Bar No. 00798327
Leonard A. "Ladd" Hirsch
State Bar No. 09717300

Two Houston Center
909 Fannin Street, 15th Floor
Houston, Texas 77010
(713) 333-5107– Telephone
(713) 333-5199– Facsimile

And

**JACOBSON LAW FIRM, P.C.**
Terry Jacobson
State Bar No. 10528000

733 West Second Avenue
Corsicana, Texas 75110
(903) 874-7117 – Telephone
(903) 874-7321 – Facsimile

**ATTORNEYS FOR PLAINTIFF COLLIN STREET BAKERY**