IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:13-CR-350-K |
| SANDY JENKINS (01)<br>KAY JENKINS (02) | |

**UNITED STATES' SENTENCING MEMORANDUM**
**REGARDING RESTITUTION AND APPLICATION OF PAYMENTS**

The United States of America ("the government") submits this memorandum in support of its position regarding the restitution obligation to be imposed against the defendants and the application of payments to the victims in this case as follows:

**Background**

Sandy Jenkins and Kay Jenkins each executed binding plea agreements (Dkt. Nos. 46 and 81, respectively) in which they each explicitly agreed to pay full restitution to The Collin Street Bakery (CSB) for the entire scope of their criminal conduct, including but not limited to all relevant conduct. *Id.* at ¶ 7 (Sandy) and 8 (Kay). Each of them also acknowledged that restitution must be imposed in the full amount of the victim's losses without consideration of their economic circumstances. *Id.* Moreover, Sandy and Kay Jenkins expressly agreed to the immediate assignment, forfeiture, transfer, or other disposition of their rights, title, and interests in all property seized in this case. *See* Plea Agreements, ¶ 6 (Sandy) and 7 (Kay). Each defendant further agreed not to assert a claim to any property or impede any efforts to liquidate or dispose of the property. *Id.*

USA Sentencing Memorandum on Restitution – Page 1

The property seized or surrendered in this case for which the government has reserved its rights to the election of remedies includes:

- **$157,393.97** in net proceeds from the sale of real property including the Jenkins' former home at 1235 West Third Avenue in Corsicana, Texas,[1] and the Jenkins' former vacation home at 35 Cibola Circle in Santa Fe, New Mexico;[2]

- **$147,748.00** in the value of four vehicles: one 2005 Lexus, one 2010 Mercedes Benz, one 2013 GMC Yukon Denali, and one 2013 BMW X53;[3]

- **$180,405.83** in United States currency comprised of the following amounts:
    - $6,598.99 in cash;
    - $3,939.65 cashier's check refund of account balance at deBoulle;
    - $26,130.32 from Bank of America, NA account no. ending in 3900;
    - $25,257.05 from Bank of America, NA account no. ending in 1127;
    - $30,967.04 from Bank of America, NA account no. ending in 3904;
    - $1,707.99 from Bank of America, NA account no. ending in 6644;

---

[1]     The Clerk of the Court receipted $175,046.97 in sale proceeds from the Corsicana Property, and made the following payments from the funds on deposit $6,060 to Glenwood Consultants, Inc. (HSBJ first invoice); $500 to Cirro Energy (electric); $500 to City of Corsicana (water); $250 to Atmos Energy (gas); and $9,598 to Glenwood Consultants, Inc. (HSBJ final invoice). *See* Agreed Orders (Dkt. Nos. 26, 33).

The United States Marshal's Service has yet to be reimbursed $745 in pre-seizure planning expenses incurred. After payment of that fee from the funds on deposit, the net amount recovered from the Corsicana property remaining on deposit with the Clerk of the Court will be $157,393.97.

[2]     After one year and five months on the market and multiple price reductions, a short sale of the Santa Fe Property finally closed on July 24, 2015 with no net proceeds subject to forfeiture. The first lienholder (Nationstar Mortgage, LLC) was satisfied in the full amount of $459,365.77, yet the second lienholder (Century Bank) suffered a payoff shortfall when it received only $44,993.24 at closing.

Sandy Jenkins pled guilty to Count 22 of the superseding indictment (Dkt. No. 28) for making a false statement to a financial institution, in violation of 18 U.S.C. § 1014. Kay Jenkins did not plead guilty to that offense. Century Bank became a victim in this case upon the short sale of the Santa Fe Property, as it incurred a loss in the amount of $14,547.74 on the fraudulently obtained and subsequently defaulted loan.

[3]     CSB has requested the immediate turnover of each vehicle and agreed to offset the National Automobile Dealers Association (NADA) total value of $147,748.00 based on the make, model, mileage, and average condition of each vehicle from its loss amount for restitution.

To date, the government has incurred $11,315.75 in expenses to store the subject vehicles, which needs to be paid to the United States Marshal's Service from the funds on deposit with the Clerk of the Court before the vehicles may be released to CSB.

- o Century Bank account numbers ending in 1677 and 5116;[4]
- o $6,577.37 from JPMorgan Chase NA account no. ending in 1043; and
- o $79,227.42 in National Financial Services, LLC account no. ending in 4154;

- **$243,045.10** remaining from deposit of $259,990 by defense counsel held in the court's registry pursuant to an Agreed Order (Dkt. No. 19) and Stipulation (Dkt. No. 23)
  - o Less $5,629.15 paid to USMS for accrued moving and storage expenses for the piano and wine collection that were released to CSB pursuant to Agreed Orders (Dkt. Nos. 26, 33);
  - o Less $11,315.75 to be paid to USMS for accrued storage expenses for the seized vehicles;

- **$10,000.00** in the value of electronic equipment, including one Naim Uniti 192 Music Player, two Wilson Duette Speakers; one Compaq Presario Laptop; and one Apple iPad;

- **$2,572,113.00** in the appraised fair market value of furs, jewelry, precious gems and metals, watches, handbags, luggage, shoes, crystal, and miscellaneous collectibles more particularly described in Attachment A to the Second Bill of Particulars (Dkt. No. 27);

- **$65,255.00** in the appraised fair market value of artwork (10 items) seized from the Santa Fe Property and two watches seized from deBoulle more particularly described in Attachment C to the Second Bill of Particulars (Dkt. No. 27);

- **$58,500.00** in the value of One Steinway Model B-Festival ES Piano (SN: 578848) with Opus 7 Piano Disc;

- **$50,913.24** in the value of 596 bottles of wine and liquor collection more particularly described in Attachment B to the Second Bill of Particulars (Dkt. No. 27);[5] and

---

[4] These funds are no longer available, as Century Bank has set off $20,551.12 from these accounts and applied those funds to reduce the balance of its cross-collateralized loan on the Santa Fe Property. *See* related filings in *United States v. Real Property, et al.*, No. 3:13-CV-3260 (N.D. Tex.).

[5] The piano and wine collection had been moved from the Corsicana Property and stored with local vendors under the government's custody and control from July 2013 until March 2014, when these items were released to CSB after payment of the $5,629.15 in expenses owed to those vendors. *See* Agreed Order (Dkt. No. 33). CSB requested turnover of the wine and piano and agreed to offset the fair market value of those items from its loss amount for restitution.

- Multiple firearms the government intends to administratively forfeit and destroy.

*See* Second Bill of Particulars (Dkt. No. 27).

The government requests that this Court enter restitution orders against each defendant and payment schedules that provide for a combination of in-kind payments by the return of the foregoing property to CSB, and the application of funds on deposit with the Clerk of the Court to be disbursed to the victims as follows.

## Argument

### A. Restitution in the full amount of each victim's loss is mandatory, regardless of either defendant's gain.

As an initial matter, pursuant to the Mandatory Victim Restitution Act (MVRA), this Court must order restitution in the full amount of the losses to each victim regardless of each defendant's economic circumstances. *See* 18 U.S.C. §§ 3663A and 3664(f)(1).[6] Once the court has set the amount of restitution owed to each victim, it then considers the economic circumstances of each defendant in setting a schedule for payment of the restitution pursuant to 18 U.S.C. § 3664(f)(2). *United States v. Arledge*, 553 F.3d 881, 900 (5th Cir. 2008).

An order of restitution, unlike either a prison sentence or an order of forfeiture, can be based only on the victim's loss, even though disgorgement of an ill-gotten gain is

---

[6] The requirement of full restitution reflects congressional intent: Congress wanted to "improve the administration of justice in Federal criminal cases by requiring Federal criminal defendants to pay full restitution to the identifiable victims of their crimes. . . . This legislation is needed to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due." S. Rep. 104-179, 1996 USCCAN 924, 925. The House and Senate managers intended for the Senate Report to supply the legislative history for the MVRA. House Conf. Rep. 104-518, 1996 USCCAN 944.

a common remedy in civil cases. *See* 18 U.S.C.A. §§ 3663A(c)(3)(B), 3664(e), (f)(1)(A); *United States v. Navarrete*, 667 F.3d 886, 888 (7th Cir. 2012).  In this case, where both defendants have been convicted of conspiracy, this Court must order each defendant to pay restitution for the entire fraudulent scheme. *See United States v. Read*, 710 F.3d 219, 231-232 (5th Cir. 2012); *United States v. Benson*, 449 Fed. App'x. 400, 402 (5th Cir. 2011) (affirming restitution order imposed for total offense conduct pursuant to plea agreement and 18 U.S.C. § 3663(a)(3) because "[r]estitution is tied to the loss suffered by the victim and 'not the defendant's gain from his illegal conduct.'").

Courts, including the Fifth Circuit, have consistently held that restitution is a distinct remedy from forfeiture. *Compare United States v. Madrid*, 610 Fed. App'x. 359, 392 (5th Cir. 2015) (noting the punitive remedy of forfeiture "seeks to disgorge any profits that the offender realized from his illegal activity") *with Read,* 710 F.3d 219 at 231 ("While restitution represents a victim's loss from the defendant's offense, forfeiture represents the defendant's gain from the offense.") (both citing *United States v. Taylor,* 582 F.3d 558, 565-68 (5th Cir. 2009).  The Fifth Circuit has repeatedly held that the amount of the restitution award "must be tied to the losses suffered by victims of the defendant's crime, not the defendant's gain from his illegal conduct." *See Arledge*, 553 F.3d at 899 (citing *United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997)).

Therefore, when determining an order of restitution, "[t]he district court need not consider the gain to the defendant by his illegal conduct; only the victim's loss is relevant to the calculation of a restitution award." *Aldredge,* 553 F.3d at 899; *Read,* 710 F.3d 219 at 231-32 (affirming restitution order and rejecting defendants' argument that $1.76

million restitution loss amount could not exceed jury's forfeiture determination that gross proceeds traceable to the offenses of conviction amounted to only $93,536); *United States v. Ogbemudia*, 361 Fed. App'x. 583, 584 (5th Cir. 2010) (enforcement of restitution order is distinct from forfeiture proceeding, thus no requirement that government trace funds to defendant's criminal offense).

Additionally, the Crime Victim Rights Act (CVRA), affords the victims in this case "the right to full and timely restitution as provided in law" and requires the government to make its best efforts to accord victims this right under 18 U.S.C. §§ 3771(a)(6) and (c)(1).  As restitution and forfeiture are distinct remedies, a defendant is generally not entitled to an offset against a restitution order to reflect the amount forfeited, or vice versa.  *See Taylor,* 582 F.3d at (affirming district court's entry of forfeiture and restitution orders, and holding no offset required).  Only the government, in the sole discretion of the Attorney General, may agree to apply forfeited funds to satisfy the restitution order if the defendant lacks sufficient resources to pay both obligations. *United States v. Newman,* 659 F.3d 1235, 1241, n. 5 (9th Cir. 2011) (noting the government's policy of giving priority to restitution if a defendant has insufficient funds to pay both).

Although courts routinely enter forfeiture orders in the form of a personal money judgment against a defendant for the amount of money obtained in the course of committing the offense of conviction, while also ordering a defendant to pay restitution in the full amount of each victim's losses, given the particular facts and circumstances in this case, the government exercises its right to the election of remedies.  To expedite and

USA Sentencing Memorandum on Restitution – Page 6

maximize the recovery of restitution to the victims *in lieu of* completing judicial forfeiture followed by the administrative process of restoring forfeited assets to the victims, the government requests the entry of restitution orders against each defendant with payment schedules that provide for a combination of in-kind payments through the return of certain seized property to CSB, and the application of funds on deposit with the Clerk of the Court to be disbursed to the victims *pro rata*.

### B. Restitution may be paid through the return of property.

Pursuant to 18 U.S.C. § 3663A(a)(1), in addition to any other penalty authorized by law, the sentencing court shall order a defendant to make restitution to the victim of the offense of conviction. If possible, the restitution order shall require the defendant to return property of a victim to the owner of the property or someone designated by the owner under 18 U.S.C. § 3663A(b)(1)(A). If the return of property is impossible, impracticable, or inadequate, the restitution order shall require the defendant to pay an amount equal to the greater of the value of the property on the date of loss, or the date of sentencing, less the value of any part of the property that is returned *as of the date of the return of the property* under 18 U.S.C. § 3663A(b)(1)(B)(i)-(ii) (emphasis added). When a defendant does not have the ability to pay restitution in full immediately, the MVRA also requires the Court to set a payment schedule for the restitution considering various factors, including the defendant's ability to pay. *See* 18 U.S.C. § 3664(f)(2) (referring to schedules under § 3572).

As for the timing and source of the restitution payment, in *Robers v. United States,* the Supreme Court observed the ways the MVRA authorizes payment of restitution to

fully compensate victims and fairly credit defendants:

> Section 3664(f)(3)(A) says that a "restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." And § 3664(f)(4) defines "in-kind payment" as including "replacement of property." These provisions would seem to give a court adequate authority to count, as part of the restitution paid, the value of [property] previously received but not sold.

134 S. Ct. 1854, 1858 (2014); *United States v. Nawaz*, 572 Fed. App'x. 24, at 26-27 (2d Cir. 2014) (affirming restitution calculation based on the resale values of the property sold and the appraisal values for the unsold property returned to victims).

The MVRA clearly provides that any offset of value from the victim's loss amount must be determined as of the date that property is recouped by the victim. *See* 18 U.S.C. § 3663A(b)(1)(B)(ii). Yet the statute is silent regarding how the property is to be valued. The government submits, and courts have frequently found, that when determining the valuation of property under the MVRA, fair market value usually provides the best measure to ensure restitution in the full amount of the victim's loss. *See, e.g., United States v. Boccagna*, 450 F.3d 107, 109, 114 (2d Cir. 2006). Because restitution is intended to be compensatory to victims, the value of property returned should be applied, to the extent possible, to restore victims to the position they occupied before the offense. *Boccagna*, 450 F.3d at 115 (citing *Hughey v. United States*, 495 U.S. 411, 416 (1990)). Using the fair market value of property — that is the price the open market yields in an arms-length transaction between seller and buyer — best serves the MVRA's purpose to

make victims whole by fully compensating them for their losses at the time the property is returned to a victim. *Id.* Fair market value "generally provides the most reliable measure of both the full loss sustained by a victim when his property is damaged, lost, or destroyed, and the degree to which that loss is mitigated by recouped property." *Id.* at 115-16. When substitute property is returned to a crime victim instead of the amount of cash to which the victim would otherwise be entitled to receive as restitution for the victim's loss, the offset value of the property returned to the victim "is generally best determined by reference to the cash it would bring the victim in a sale on the open market." *Id.*

While the court has discretion to determine the value of property returned to a victim for purposes of calculating the loss amount in a restitution order, it must consider that the purpose of restitution is neither to punish a defendant nor to provide a windfall to a victim, but to ensure that victims are made whole to the greatest extent possible. *United States v. James*, 564 F.3d 1237, 1245-46 (10th Cir. 2009) (citing *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). Therefore, "[a] sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *Id.*

In this case, the Court should order the restitution to be paid to CSB in-kind through the return of property to be offset from the restitution amount at fair market value. Alternatively, if the sale of returned property is foreseen but has not yet taken place, the court may defer determination of the restitution amount for 90 days after

USA Sentencing Memorandum on Restitution – Page 9

sentencing, to allow the victim time to sell the property and account for the amount recovered. *See Robers*, 134 S. Ct. at 1858; 18 U.S.C. § 3664(d)(5).

### C. Restitution payment schedules may set a priority of payment among victims.

The MVRA "gives sentencing courts significant flexibility to tailor restitution orders to particular circumstances." *United States v. Perry*, 360 F.3d 519, 535–36 (6th Cir. 2004). Pursuant to 18 U.S.C. § 3664(i), if more than one victim has sustained a loss requiring restitution by a defendant, the Court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim.

Absent such direction, the Clerk of the Court makes restitution payments on a *pro rata* basis, such that each victim is assigned a fraction, the numerator of which would be their individual loss amount, and the denominator of which would be the total losses of all the victims added together. As receipted funds are disbursed, the Clerk of the Court multiplies the amount of each disbursement by each victim's fraction or distribution percentage to determine its payment to each victim. This is the typical method of distribution in a receivership. *See United States v. Durham*, 86 F.3d 70 (5th Cir. 1996).

Yet pursuant to 18 U.S.C. §§ 3611 and 3612 and 28 U.S.C. §§ 2041 and 2042, the Clerk of the Court is to disburse payments as ordered by the Court. *See, e.g., United States v. O'Connor*, 321 F. Supp. 2d 722, 731 at n. 21 (E.D. Va., 2004) (noting the Clerk of the Court serves ministerial role to implement judicial orders). And 18 U.S.C. § 3664(i) specifically authorizes the Court to enter a payment schedule directing the Clerk

of the Court to disburse funds other than *pro rata*.

In this case, the government requests that this Court order the restitution to be paid to CSB in-kind through the wine and piano already returned to CSB, turnover of the property in the custody of the FBI and United States Marshal's Service, excluding firearms, and application of the funds on deposit with the Clerk of the Court based on the following formula.

CSB has or will have received the return of property with a total estimated value of $2,904,529.24:

- Piano $58,500;
- Wine collection $50,913.24;
- Vehicles $147,748;
- Jewelry, artwork, and luxury items $2,637,368; and
- Electronic equipment $10,000

To be offset from its total loss amount of $16,764,128.95, so the amount of restitution to be imposed should be $13,859,599.71.   Century Bank's total loss amount is $14,547.74. So the total loss amounts of both victims to be imposed as restitution is $13,874,147.45.

The United States Marshal's Service holds $180,405.83 in seized United States Currency, which the government requests this Court order be turned over to the Clerk of the Court.  To date, the Clerk of the Court holds $243,045.10 in surrendered United States Currency, plus $157,393.97 in net proceeds from real property.

After receipt of the transfer of funds from the United States Marshal's Service, and payment of expenses, the total of cash or cash equivalents the Clerk of the Court will

have available to disburse is $580,844.90.

Pursuant to 18 U.S.C. § 3664(i) regarding the priority of payment, since CSB stands to recover 17.3% of its losses through the return of property before the application of funds on deposit with the Clerk of the Court, the government requests that $2,516.76 (which represents 17.3% of Century Bank's $14,547.74 loss) be immediately disbursed to Century Bank from the funds on deposit with the Clerk of the Court.  Thereafter, the remaining funds on deposit and future receipts in the Clerk's Office should be disbursed to CSB and Century Bank on a *pro rata* basis.

                      Respectfully submitted,

                      JOHN R. PARKER
                      UNITED STATES ATTORNEY

                      */s/ Melissa A. Childs*
                      MELISSA A. CHILDS
                      Assistant United States Attorney
                      Illinois Bar No. 6273797
                      1100 Commerce Street, Third Floor
                      Dallas, TX 75242-1699
                      Telephone: 214-659-8600
                      Facsimile: 214-659-8812
                      melissa.childs@usdoj.gov

# CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney certifies that in accordance with Fed. R. Civ. P. 5, LR 5.1, and Fed. R. Crim. P. 49, LCrR 49.2, and the Miscellaneous Order on Electronic Case Filing (ECF), the following document:

USA's Sentencing Memorandum on Restitution and Application of Payments

was served on September 15, 2015 pursuant to the district court's ECF system as to ECF filers, and was sent by first-class mail on September 15, 2015 to the following non-ECF filers:

CRAIG A. HARRIS
Hiersche, Hayward, Drakeley
& Urbach PC
15303 Dallas Parkway, Suite 700
Addison, Texas 75001
*Attorney for Non-Party Victim*
*The Collin Street Bakery*

WAYNE MEISSNER
Fitzgerald & Meissner, P.C.
812 San Antonio Street, Suite 400
Austin, Texas 78701
*Attorney for Non-Party Allison Jenkins*

J. KERWIN HOLLOWWA
Spann, Hollowwa & Artley
P.O. Box 1031
1304 Central Avenue, S.W.
Albuquerque, NM 87103
*Attorney for Non-Party Victim Century Bank*

KERRI ANDERSON DONICA
Law Office of Kerri Anderson Donica
301 W. 3rd Avenue
Corsicana, Texas 75110
*Attorney for Kay Jenkins, In re Marriage of Jenkins*, No. C13-22531-CV (County Court at Law, Navarro Co., 13th Jud. Dist.)

          *s/ Melissa A. Childs*
          Melissa A. Childs
          Assistant United States Attorney